# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**VIRGINIA GIPSON**
        **Plaintiff,**

    v.                                        Case No. 16-C-0865

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Virginia Gipson applied for supplemental security income, alleging that she could not work due to a variety of impairments, including degenerative disc disease, depression, fibromyalgia, and obesity. (Tr. at 126, 143.) Denied initially and on reconsideration (Tr. at 47, 48, 77, 93), plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 97, 103), but the ALJ also denied the claim (Tr. at 14-29), and the Appeals Council denied review (Tr. at 1). On plaintiff's request for judicial review, the court remanded because of an incomplete record (Tr. at 1478-81), but on remand a different ALJ again denied the claim (Tr. at 1520), and the Council again denied review (Tr. at 1390). Plaintiff again seeks judicial review of the denial.

## I. ALJ'S DECISION

In the decision under review, the ALJ, following the familiar five-step sequential evaluation process,[1] determined at step one that plaintiff had not engaged in substantial gainful

---

[1]Under this test, the ALJ determines: (1) whether the claimant is currently working; (2) if not, whether she suffers from severe, medically determinable impairments; (3) if so, whether the claimant's impairments meet or medically equal the requirements of one of the conclusively disabling impairments set forth on the agency's Listings; (4) if not, whether the claimant has

activity since October 5, 2010, the application date, and at step two that she suffered from the severe impairments of degenerative disc disease in the cervical and lumbar spine, fibromyalgia, and obesity. (Tr. at 1525.) The ALJ found that plaintiff's chronic pain and depression caused no more than mild mental limitations and were thus non-severe. (Tr. at 1525-26.) At step three, the ALJ found that none of plaintiff's impairments met or equaled a Listing, including Listing 1.04 applicable to degenerative disc disease. (Tr. at 1528.)

Prior to step four, the ALJ determined that plaintiff retained the RFC for sedentary work, with no more than occasional stooping, crouching, and crawling, and no exposure to concentrated pulmonary irritants. (Tr. at 1528.) In making this finding, the ALJ considered plaintiff's alleged symptoms and the medical opinion evidence. (Tr. at 1528-29.)

Plaintiff alleged chronic, severe pain extending from her neck through her lower back, with associated upper and lower extremity radiation. She reported taking various narcotic medications, which provided only partial relief and caused side effects of sedation and constipation. She also reported that other pain-relief measures such as heat, ice, and spinal injections provided only temporary relief. Plaintiff further testified that she had memory problems, trouble concentrating, and difficulty staying on task due to chronic pain and medication side effects. Plaintiff indicated that she could sit for 20-30 minutes, stand for 10 minutes, walk one block, and carry 5-10 pounds. She further indicated that needed to lie down for two to four hours a day, one to two days per week. (Tr. at 1529.) The ALJ concluded that plaintiff's impairments could reasonably be expected to cause the symptoms she alleged, but

---

the residual functional capacity ("RFC") to return to her past relevant work; and (5) if not, whether she can make the adjustment to other work in the national economy. See, e.g., Varga v. Colvin, 794 F.3d 809, 812 n.2 (7th Cir. 2015).

2

that plaintiff's statements about the intensity, persistence, and limiting effects these symptoms were "not entirely credible." (Tr. at 1529.)

As for the opinion evidence, the ALJ gave great weight to the opinions of the agency consultants that plaintiff could do sedentary work, finding them well reasoned and consistent with the evidence of record. (Tr. at 1531.) The ALJ gave minimal weight to the opinions of plaintiff's treating providers supporting greater limitations. (Tr. at 1532-34.)

At step four, based on the RFC for sedentary work, the ALJ concluded that plaintiff could return to her past work as a receptionist. (Tr. at 1534.) In the alternative, he concluded at step five that plaintiff could perform other jobs, including food preparer, order clerk, and office helper, as identified by the vocational expert who testified at the hearing. (Tr. at 1535-36.) The ALJ accordingly found plaintiff not disabled. (Tr. at 1536.)

## II. STANDARD OF REVIEW

The ALJ's decision will be upheld if it is supported by substantial evidence, meaning such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Ghiselli v. Colvin, 837 F.3d 771, 776 (7th Cir. 2016). Under this deferential standard, the court may not re-weigh the evidence or substitute its judgment for the ALJ's; however, this does not mean that the court will simply rubber-stamp the ALJ's decision without a critical review of the evidence. Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015). The court reviews the entire record, considering both the evidence that supports, as well as the evidence that detracts from, the ALJ's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Scrogham v. Colvin, 765 F.3d 685, 695 (7th Cir. 2014). In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful

3

appellate review. Id. Finally, the ALJ must comply with the agency's regulations regarding the consideration of medical evidence, including the reports of a claimant's treating physicians. See, e.g., Moore v. Colvin, 743 F.3d 1118, 1127 (7th Cir. 2014).

### III.  DISCUSSION

Plaintiff argues that the ALJ erred in (A) considering whether her back impairment met Listing 1.04, (B) determining RFC, (C) evaluating the treating source reports, and (D) considering the credibility of her allegations. I address each argument in turn.

**A.    Listing 1.04**

In considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the Listing by name and offer more than perfunctory analysis. Minnick, 775 F.3d at 935. At issue here is Listing 1.04, which covers disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Additionally, under the sub-section applicable in this case, the claimant must present evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). Id. § 1.04(A).

In the present case, the ALJ stated: "The undersigned considered the claimant's degenerative disc disease under applicable section 1.04, but there is no evidence of nerve root compression, spinal arachnoiditis, or stenosis resulting in pseudoclaudication." (Tr. at 1528.)

4

The ALJ in Minnick used virtually identical language, which the Seventh Circuit found to be "the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." 775 F.3d at 935-36.

A deficient analysis may be deemed harmless if the claimant failed to present evidence that she, in fact, met or equaled a Listing. See, e.g., Knox v. Astrue, 327 Fed. Appx. 652, 655 (7th Cir. 2009); see also Minnick, 775 F.3d at 936 (going on to discuss the claimant's evidence). However, the record in the present case contains evidence suggesting that plaintiff may meet Listing 1.04(A). Most significantly, a May 2012 lumbar MRI report stated: "Diffuse disc bulge and 5 mm right paracentral disc protrusion abuts the right traversing S1 nerve root. The disc along with facet and ligamentum flavum hypertrophy results in bilateral neural foraminal encroachment and abuts the existing L5 nerve roots." (Tr. at 1694.) And a follow-up MRI report from November 2013 stated: "At L5-S1, 6 mm broadheaded right paracentral and foraminal disc protrusion along with right ligamentum flavum hypertrophy causes right lateral recess stenosis and abuts the right lateral traversing S1 nerve root. The disc pathology and facet joint hypertrophy results in right neural forminal encroachment and abuts the right existing L5 nerve root." (Tr. at 1880.) Further, the treatment records document neuropathic pain and lumbar radiculopathy (e.g., Tr. at 1886, 1900-02), reduced range of motion (e.g., Tr. at 636-37, 901, 1199, 1875), muscle weakness and decreased sensation (e.g., Tr. at 1861, 2019-21), and positive straight-leg raising tests (e.g., Tr. at 905, 1199, 1764).

The Commissioner responds that plaintiff failed to present evidence on the threshold requirement of Listing 1.04 – a disc protrusion that "compromises" a nerve root. The MRI reports say plaintiff's disc "abuts" the nerve roots, which, the Commissioner contends, is not the same thing as saying the disc "compresses" the nerve. Perhaps that is a reasonable

5

inference one could draw based on dictionary definitions of the quoted terms, but the ALJ did not rule on that basis, and the Commissioner's lawyers cannot defend on grounds the ALJ himself did not embrace.[2] Kastner v. Astrue, 697 F.3d 642, 648 (7th Cir. 2012). Further, as plaintiff notes in reply, a claim under Listing 1.04(A) will not stand or fall based solely on imaging evidence; the Listing requires nerve root compression characterized by limited motion, muscle weakness, etc., and in her initial brief plaintiff highlighted extensive evidence of the required signs and symptoms, which the Commissioner does not address. The matter must be remanded for reconsideration of Listing 1.04.

**B.    RFC**

A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations. Thomas v. Colvin, 745 F.3d 802, 807 (7th Cir. 2014). In determining RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe. Villano v. Astrue, 556 F.3d 558, 563 (7th Cir. 2009). "Additionally, the RFC assessment must include a narrative discussion describing how the evidence, both objective and subjective, supports each conclusion." Zblewski v. Astrue, 302 Fed. Appx. 488, 492 (7th Cir. 2008) (citing Conrad v. Barnhart, 434 F.3d 987, 991 (7th Cir. 2006); SSR 96-8p). The ALJ is further required to explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. Id. (citing SSR 96-8p).

As indicated above, in the present case the ALJ found that plaintiff retained the RFC for sedentary work, with no more than occasional stooping, crouching, and crawling, and no

---

[2]Nor can I determine, based on the boilerplate set forth in the decision, that the ALJ's determination turned on the absence of "compression."

6

exposure to concentrated pulmonary irritants. (Tr. at 1528.) Plaintiff complains that the ALJ included no upper extremity limitations, despite finding her cervical disc disease severe. She points to cervical MRIs documenting disc protrusion abutting the nerve roots (Tr. at 1656, 1773); treatment notes documenting neck pain radiating to both shoulders and the left arm, with tingling, weakness, and decreased sensation of the left arm (Tr. at 1861, 2019, 2034); physical therapy records documenting limited upper extremity activity tolerance (Tr. at 1152, 1917); and her testimony that these symptoms affected her ability to use her hands, e.g., she dropped things and had a hard time opening things or using buttons and zippers (Tr. at 1449). Based on these symptoms, plaintiff's primary physician, Dr. Withers, opined that plaintiff could use her hands and arms "occasionally" (Tr. at 979 & 2002), a restriction the vocational expert said would preclude the jobs the ALJ found plaintiff could do (Tr. at 1466-67).

      The Commissioner responds that the ALJ properly accounted for plaintiff's upper extremity weakness by limiting her to sedentary work, which requires lifting no more than 10 pounds. However, the ALJ did not say that he was accounting for upper extremity problems by limiting plaintiff to sedentary work, so this is not a proper basis for upholding the decision. See Hill v. Colvin, 807 F.3d 862, 869 (7th Cir. 2015). In any event, a lifting restriction would not necessarily address plaintiff's alleged problems with handling, fingering, and reaching. See Kadletz v. Astrue, No. 09-C-1101, 2010 BL 170725, at *12-13 (E.D. Wis. July 26, 2010) (noting that sedentary work generally requires good use of the hands and fingers for repetitive hand-finger actions).

      The Commissioner further argues that the ALJ reasonably rejected Dr. Withers's reports as inconsistent with some of his treatment notes documenting full range of motion and normal strength. (Tr. at 1532, citing Tr. at 1108; Tr. at 1533, citing Tr. at 2038 & 2043.) The Seventh

7

Circuit has rejected the notion "that a physician's evidence can be disregarded unless he has detailed notes to back it up." Herrmann v. Colvin, 772 F.3d 1110, 1111 (7th Cir. 2014). In any event, even if the ALJ properly discounted Dr. Withers's reports, this did not excuse the ALJ from considering the other evidence of upper extremity limitations, summarized above. The matter must be remanded for reconsideration of plaintiff's RFC.[3]

**C.    Treating Source Reports**

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). An ALJ who does not credit such an opinion must offer good reasons for doing so and must address the appropriate weight to give the opinion, Stage v. Colvin, 812 F.3d 1121, 1126 (7th Cir. 2016), considering a variety of factors, including the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion, Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ rejected several treating source reports in this case. First, he discounted the opinions of Dr. Withers, who, in addition to the upper extremity limitations discussed above, concluded that plaintiff would due to her symptoms be off task at least 15% of the time, required additional unscheduled breaks during the workday, and would be absent once or twice

---

[3]Plaintiff also argues that the ALJ failed to account for non-exertional limitations resulting from her depression and chronic pain. Resolution of this issue depends in part on whether the ALJ properly evaluated the opinions of plaintiff's mental health providers, which I discuss later in this decision. Plaintiff contends that, even if the ALJ correctly found her depression non-severe, he should have included appropriate limitations in the RFC. While RFC must include limitations arising from all impairments, severe and non-severe, in making this argument plaintiff identifies no specific limitations the ALJ should have included.

8

per month due to her impairments. (Tr. at 976-79; 1999-2003.) The vocational expert testified that each of these additional limitations would preclude work. (Tr. at 1464-66.) The ALJ found these limitations inconsistent with the doctor's treatment notes, citing a few instances where plaintiff appeared to be doing well (Tr. at 1532), but treating source reports should be evaluated based on their consistency with the record as a whole. 20 C.F.R. § 404.1527(4)(2); see also Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ also stated that the doctor failed to provide a "logical bridge" for hand and arm limitations (Tr. at 1533), but it is the ALJ's job to determine whether the evidence supports the doctor's conclusions. See, e.g., Beardsley v. Colvin, 758 F.3d 834, 840 (7th Cir. 2014) (finding that ALJ failed to build a logical bridge that would justify discounting doctor's opinion). To the extent that the ALJ was unable to understand the basis for Dr. Withers's opinion, he could have contacted the doctor for clarification. See, e.g., Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

The ALJ also discounted the opinion of Dr. Thomas-King, plaintiff's pain management physician, that plaintiff could not sustain full-time work (Tr. at 1994-98), stating that the treatment notes did support the degree of debilitation alleged (Tr. at 1533). As indicated, an ALJ may not disbelieve the opinion of a qualified professional just because she does not have detailed notes to back it up. Herrmann, 772 F.3d at 1111. The ALJ also noted that plaintiff had multiple no-shows for appointments with Dr. Thomas-King (Tr. at 1533, 1995), but he did not explain how this undercut the doctor's opinion.[4]

---

[4]As the Commissioner notes, an ALJ may consider as a strike against the claimant's credibility her failure or refusal to adhere to the treatment programs prescribed by her

9

Finally, the ALJ rejected the reports from plaintiff's psychotherapist, Mark Fossie, who assessed significant limitations in attention, concentration, and ability to handle stress (Tr. at 431-35; 1345-49), and her psychologist, Dr. Martin-Thomas, who concluded that, due to depression and chronic pain, plaintiff would require unscheduled breaks and frequent absences from work (Tr. at 1957-60). The ALJ concluded that Fossie's limitations were not documented in the treatment notes; referenced by plaintiff's former psychologist, Dr. Smuckler; or observed during routine physical exams (Tr. at 1533-34), and that Dr. Martin-Thomas's limitations were "not supported longitudinally in the record"; her opinions regarding the effects of plaintiff's pain were outside her area of expertise; and she had been seeing plaintiff for less than a year at the time of the report (Tr. at 1534). The ALJ stood on firmer ground here, as he referenced the opinion of another treating psychologist, Dr. Smuckler, who found that plaintiff's pain and depression did not cause significant limitations (Tr. at 1534, citing Tr. at 985-88), and his criticisms tracked the regulatory factors (e.g., length of treatment relationship, physician specialty, consistency/supportability). Nevertheless, because the matter must be remanded on other grounds, the ALJ should on remand ensure that he has considered the entire record, including both of Fossie's reports (not just the 2012 assessment),[5] in evaluating plaintiff's

---

physicians. Castile v. Astrue, 617 F.3d 923, 930 (7th Cir. 2010). However, the ALJ did not draw that connection in the present case, and in any event, an ALJ must inquire into the claimant's reasons before relying on the absence of medical treatment to support an adverse credibility finding. See Craft v. Astrue, 539 F.3d 668 , 679 (7th Cir. 2008). In the present case, plaintiff's therapist noted that plaintiff reported debilitating pain as a factor in getting to the office. (Tr. at 1303.)

[5]The ALJ noted that, as a therapist, Fossie could not make a medical diagnosis. (Tr. at 1534.) However, Dr. Martin-Thomas, an acceptable medical source, also diagnosed depression, and pursuant to SSR 06-03p therapists are permitted to opine on a claimant's functional limitations. See Thomas v. Colvin, 826 F.3d 953, 961 (7th Cir. 2016).

10

mental RFC. The ALJ should also consider whether plaintiff's condition changed between 2011, when Dr. Smuckler prepared his report, and 2014, when Dr. Martin-Thomas drafter her's. See Punzio, 630 F.3d at 710 (noting the variable nature of mental illness).

**D.     Credibility**

The court will defer to an ALJ's credibility finding so long as it is not "patently wrong." Engstrand v. Colvin, 788 F.3d 655, 660 (7th Cir. 2015). However, the ALJ still must competently explain an adverse-credibility finding with specific reasons supported by the record. Id. In determining credibility, the ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations. Villano, 556 F.3d at 562. The ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it. Id. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding. Engstrand, 788 F.3d at 660.

Here, the ALJ concluded that plaintiff's impairments could reasonably be expected to cause the symptoms she alleged, but that plaintiff's statements about the intensity, persistence, and limiting effects these symptoms were "not entirely credible for the reasons explained in this decision." (Tr. at 1529.) The ALJ went on to provide several reasons for this conclusion, but they do not withstand scrutiny.

First, the ALJ concluded that while the medical evidence detailed plaintiff's complaints of chronic pain and treatment therefor, it did not "document objective evidence sufficient to support the degree of debilitation reported." (Tr. at 1531.) As indicated, absence of objective support alone is not a basis for rejecting a claimant's allegations. See, e.g., Pierce v. Colvin,

11

739 F.3d 1046, 1050 (7th Cir. 2014). The ALJ stated that plaintiff's conditions improved with conservative measures, but the record documents a fairly extensive course of treatment, including several series of lumbar and cervical injections (e.g., Tr. at 219, 295, 621, 646, 836, 1116, 1703, 1782, 1864, 1912), radio-frequency ablation (e.g., Tr. at 592, 596, 1129), physical therapy (e.g., Tr. at 1826), and strong pain medications (e.g., Tr. at 588), which provided only partial or temporary relief (e.g., Tr. at 228, 599, 666, 1900, 2019).

Second, the ALJ stated that plaintiff did not routinely complain of medication side effects, nor were such effects noticed by her treating professionals. (Tr. at 1531.) However, Dr. Withers, Dr. Thomas-King, and therapist Fossie all noted drowsiness and dizziness in their reports (Tr. at 432, 1387, 1996), side effects corroborated by the secondary materials plaintiff submitted (Tr. at 1961-63).

Third, the ALJ noted that plaintiff's doctors recommended exercise (and plaintiff at times reported involvement in routine exercise), which the ALJ found inconsistent with the need to lie down during the day. (Tr. at 1531.) But there is nothing inconsistent with engaging in activities like exercise for a period of time and then lying down for a few hours. See Engstrand, 788 F.3d at 661; see also Carradine v. Barnhart, 360 F.3d 751, 755-56 (7th Cir. 2004) (finding that ability to engage in moderate exercise, as suggested by doctors, did not mean the claimant lied about being in pain or that she could work full-time).

Finally, the ALJ noted plaintiff's poor employment history, irrespective of any alleged disability. He also speculated that due to her receipt of welfare and child supports payments she lacked an incentive to work. (Tr. at 1531.) While a claimant's work history is a relevant consideration, in cases where "the claimant alleges disability based in large part on chronic conditions (rather than some traumatic injury), employment history may mean little absent

12

further evaluation as to why the work record is limited." McGee v. Astrue, 770 F. Supp. 2d 945, 947 n.1 (E.D. Wis. 2011); see also Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996) (rejecting reliance on poor work history where the claimant had long suffered from numerous impairments rendering her unemployable).

## IV. CONCLUSION

Plaintiff argues for an award of benefits, but that is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 355 (7th Cir. 2005). Because this record contains conflicting evidence, which the ALJ should address in the first instance, the appropriate remedy is remand. See Israel v. Colvin, 840 F.3d 432 (7th Cir. 2016).

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this decision. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of January, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge